# EXHIBIT A



# Chester County
# Court of Common Pleas
## Cover Sheet

Docket No:

|  |  |
|---|---|
| **Plaintiff(s): (Name, Address)**<br><br>Public Employees' Retirement System of Mississippi<br>29 Mississippi Street, Jackson, MS 39201-1005 | **Plaintiff's/Appellant's Attorney** (circle one)<br>(Name, firm, address, telephone and attorney ID#)<br><br>Mark S. Goldman, PA# 48049,<br>Goldman Scarlato & Penny, P.C., 161 Washington St., Suite 1025,<br>Conshohocken, PA 19428 |
| **Defendant(s): (Name, Address)**<br><br>Endo International PLC<br>1400 Atwater Drive, Malvern, PA 19355 | Are there any related cases? Please provide case nos.<br><br>N/A |

**Defendants who are proceeding without counsel are strongly urged to file with the Prothonotary a written statement of an address AND a telephone number at which they can be reached.**

If this is an appeal from a Magisterial District Judgment, was appellant ◯ Plaintiff or ◯ Defendant in the original action?

### Jury Trial Demanded  ⦿ Yes  ◯ No

### Nature of case if not on previous cover sheet – Please choose the most applicable

| | |
|---|---|
| ☐ Annulment<br>☐ Custody - Conciliation Required<br>☐ Custody - Foreign Order<br>☐ Custody - No Conciliation Required<br>☐ Divorce - Ancillary Relief Request<br>☐ Divorce - No Ancillary Relief Requested<br>☐ Foreign Divorce<br>☐ Foreign Protection from Abuse<br>☐ Paternity<br>☐ Protection from Abuse<br>☐ Standby Guardianship | ☐ Writ of Certiorari<br>☐ Injunctive Relief<br>☐ Mechanics Lien Claim<br>☐ Issuance of Foreign Subpoena<br>☐ Name Change<br>☐ Petition for Structured Settlement |

| | |
|---|---|
| **Arbitration Cases Only**<br>Arbitration Date [          ]<br>Arbitration Time [          ]<br>Defendants are cautioned that the scheduling of an arbitration date does not alter the duty of the defendant to respond to the complaint and does not prevent summary disposition from occurring prior to the arbitration date.<br>This matter will be heard by a Board of Arbitrators at the time and date specified but, if one or more of the parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties. There is no right to a trial *de novo* on appeal from a decision entered by a judge. | **Notice of Trial Listing Date**<br>Pursuant to C.C.R.C.P. 249.3, if this case is not subject to compulsory arbitration it will be presumed ready for trial twelve (12) months from the date of the initiation of the suit and will be placed on the trial list one (1) year from the date the suit was filed unless otherwise ordered by the Court.<br><br>To obtain relief from automatic trial listing a party must proceed pursuant to C.C.R.C.P. 249.3(b), request an administrative conference and obtain a court order deferring the placement of the case on the trial list until a later date. |

**File with:** Chester County Justice Center, Prothonotary Office, 201 W. Market St., Ste. 1425, PO Box 2746, West Chester, PA 19380-0989

These cover sheets must be served upon all other parties to the action immediately after filing.
Submit enough copies for service.      Form 1



**SUPPLEMENT TO CHESTER COUNTY COURT OF COMMON PLEAS COVER SHEET**
**DEFENDANTS' NAMES AND ADDRESSES**

[Defendant ENDO INTERNTIONAL PLC is listed on the Chester County Court of Common Pleas Cover Sheet]

Rajiv Kanishka Liyanaarchchie de Silva
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

Suketu P. Upadhyay
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

Daniel A. Rudio
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

Roger H. Kimmel
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

Shane M. Cooke
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

John J. DeLucca
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

Arthur J. Higgins
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

Nancy J. Hutson
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

Michael Hyatt
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

William P. Montague
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

Jill D. Smith
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

William F.Spengler
c/o Endo International PLC, 1400 Atwater Drive, Malvern, PA 19355

Goldman, Sacks & Co.
200 West Street, New York, NY 10282

J.P. Morgan Securities LLC
383 Madison Avenue, New York, NY 10179

Barclays Capital Inc.
745 7th Avenue, New York, NY 10019

Deutsche Bank Securities Inc.
60 Wall Street, New York, NY 10005

RBC Capital Markets, LLC
3 World Financial Center, 200 Vesey Street, New York, NY 10281

Citigroup Global Markets LLC
390 - 388 Greenwich St, New York, NY 10013-2396

Morgan Stanley & Co. LLC
1585 Broadway Avenue, New York, NY 10036-8293.

Suntrust Robinson Humphrey, Inc.
3333 Peachtree Road North East, Atlanta Financial Center, South Tower, 9th Floor, Atlanta, GA 30326-1070

TD Securities (USA) LLC
31 West 52nd Street, New York, NY 10019-6101

Mitsubishi UFJ Securities (USA) Inc.
1221 Avenue of the Americas, 6th Floor, New York, NY 10020-1001

2017-02081-MJ

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
## CHESTER County

| For Prothonotary Use Only: | |
|---|---|
| Docket No: | 2017 FEB 28   PM 3:19 |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**
- ☒ Complaint
- ☐ Writ of Summons
- ☐ Petition
- ☐ Transfer from Another Jurisdiction
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| Public Employees' Retirement System of Mississippi, et al. | Endo International PLC, et al. |

**Are money damages requested?** ☒ Yes ☐ No

Dollar Amount Requested: (check one)
- ☐ within arbitration limits
- ☒ outside arbitration limits

**Is this a Class Action Suit?** ☒ Yes ☐ No

**Is this an MDJ Appeal?** ☐ Yes ☐ No

Name of Plaintiff/Appellant's Attorney: Mark S. Goldman

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**SECTION B**

**TORT** (do not include Mass Tort)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (does not include mass tort)
- ☐ Slander/Libel/ Defamation
- ☐ Other:

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:

**CONTRACT** (do not include Judgments)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other

- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other

- ☐ Other:

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other

- ☐ Zoning Board
- ☐ Other:

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☒ Other:
  Securities



*Updated 1/1/2011*

**GOLDMAN SCARLATO & PENNY, P.C.**
By:   Mark S. Goldman (PA Atty. No. 48049)
8 Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA  19428
Tel.: (484) 342-0700
Email: Goldman@gskplaw.com

**LABATON SUCHAROW LLC**
By:  Jonathan Gardner, Esq.
      Serena Hallowell, Esq.
      Thomas W. Watson, Esq.
140 Broadway
New York, NY  10005
Tel.: (212) 907-0700
Email: JGardner@labaton.com
      SHallowell@labaton.com
      TWatson@labaton.com



*Counsel for Plaintiff*

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, Individually and on Behalf of All Others Similarly Situated, | CIVIL ACTION |
| Plaintiff, | Case No. |
| vs. | CLASS ACTION |
| ENDO INTERNATIONAL PLC; RAJIV KANISHKA LIYANAARCHCHIE DE SILVA; SUKETU P. UPADHYAY; DANIEL A. RUDIO; ROGER H. KIMMEL; SHANE M. COOKE; JOHN J. DELUCCA; ARTHUR J. HIGGINS; NANCY J. HUTSON; MICHAEL HYATT; WILLIAM P. MONTAGUE; JILL D. SMITH; WILLIAM F. SPENGLER; GOLDMAN, SACHS & CO.; J.P. MORGAN SECURITIES LLC; BARCLAYS CAPITAL INC.; DEUTSCHE BANK SECURITIES INC.; RBC CAPITAL MARKETS, LLC; CITIGROUP GLOBAL MARKETS, LLC; MORGAN STANLEY & CO. LLC; SUNTRUST ROBINSON HUMPHREY, INC.; TD SECURITIES (USA) LLC; and MITSUBISHI UFJ SECURITIES (USA) INC., | DEMAND FOR JURY TRIAL |
| Defendants. | |

1

Plaintiff, Public Employees' Retirement System of Mississippi ("Mississippi PERS" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by its undersigned attorneys, alleges the following based upon the investigation of its counsel, which included, among other things, a review of United States Securities Exchange Commission ("SEC") filings made by Endo International plc ("Endo" or the "Company"), as well as securities analysts' reports, advisories, press releases, media reports and other public statements issued by or about the Company, including statements made in the Registration Statement, as defined herein. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth after reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.      The claims asserted herein are solely strict liability and negligence claims for violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") relating to Endo International plc's June 5, 2015 underwritten secondary public offering (the "Offering") of 27,627,628 shares of common stock at $83.25 per share.  This securities class action is brought on behalf of a Class of all persons or entities that purchased or otherwise acquired Endo common stock pursuant to the Company's Registration Statement issued in connection with the Offering, as defined herein, and who were damaged thereby.

2.      Pursuant to the Securities Act, Defendants (as defined herein) are strictly liable for the material misstatements and omissions in the Registration Statement issued in connection with the Offering, and the claims herein specifically exclude any allegations of knowledge or scienter.  The claims in this action are based solely on strict liability and negligence, and are not based on any reckless or intentionally fraudulent conduct by or on behalf of Defendants—*i.e.*, they do not allege, arise from, or sound in, fraud.  Plaintiff specifically disclaims any allegation of fraud, scienter, or recklessness in these non-fraud claims.

2

3.     Defendant Endo develops, manufactures, and distributes pharmaceutical products and devices worldwide.  At all relevant times, it had three major business units: U.S. Branded Pharmaceuticals (the "Branded division"), U.S. Generic Pharmaceuticals (the "Generic division"), and International Pharmaceuticals.

4.     On May 18, 2015, Endo announced that it would be expanding its Generic division with the acquisition of Par Pharmaceuticals ("Par"), a pharmaceutical company with a large portfolio of generic drugs.  In order to finance part of the $8.05 billion acquisition price, the Company announced that it would be conducting a secondary public offering.  On June 2, 2015, the Company announced an underwritten public offering of $1.75 billion of ordinary shares, later increased to $2 billion, to finance the acquisition (the "Offering").

5.     On June 4, 2015, the Company issued a Prospectus Supplement in connection with the offering and announced the offering price of $83.25 per share.  The Prospectus Supplement updated and formed part of the Registration Statement on Form S-3 (File. No. 333-204657) and Prospectus issued by the Company on June 2, 2015 (collectively, with the Prospectus Supplement, the "Registration Statement").

6.     Plaintiff and other members of the Class purchased Endo common stock on the Offering from the Underwriter Defendants pursuant to the Registration Statement at the offering price of $83.25 per share.  However, Plaintiff and the Class were unaware that the Registration Statement contained untrue statements of then-present material fact and failed to disclose material information and negative trends about Endo's Generic division required by SEC regulations. When the truth about the false and misleading nature of the Registration Statement was revealed, Endo's stock price plummeted, damaging Plaintiff and members of the Class.

7.      By early 2015, following the declining performance of its Branded division, Endo had come to rely on its Generic division for a significant portion of its revenue.  Housed within Endo's subsidiary, Qualitest, the Generic division generated approximately half the Company's revenue in 2014.  The Generic division's portfolio of drugs was concentrated in pain medications and controlled substances, which contributed approximately 53% of the division's revenue.

8.      Unbeknownst to investors, however, in early 2015, and prior to the Offering, the market for Endo's existing pain and controlled substances products was rapidly eroding.  Following widespread public concern about opioid abuse, prescriptions for the opioid-based pain medications were declining for the first time in decades, as doctors responded to an epidemic in opioid addiction and the federal government tightened the prescribing rules for certain opioid pain killers in October 2014 by reclassifying, or "upscheduling," hydrocodone, the active ingredient in some of the highest-selling pain medications.  The "upscheduling" resulted in hydrocodone combination products being listed on Schedule II, a more restrictive category of controlled substances, which unlike Schedule III drugs, cannot be refilled absent a new prescription. In the first quarter of 2015, following the upscheduling, prescriptions for hydrocodone-based medications dropped over 20% from the third quarter of 2014.  These changes directly affected Endo's top selling generic drugs, which combined hydrocodone and acetaminophen (a combination marketed under the brand name Vicodin).  These adverse trends were not disclosed in the Offering documents or the documents incorporated therein by reference.

9.      Indeed, rather than disclose the eroding market for Endo's most important generic medications, the Prospectus Supplement stated that Endo's Generic division was "***Capitalizing***

4

*on encouraging demand trends for a differentiated portfolio of controlled substances and liquids*."

10.     The Prospectus Supplement similarly failed to disclose that this downward trend would be catastrophic to Qualitest's business prospects—as management would later admit. Nor did it disclose that because 40% of Qualitest's business was generated by its pain portfolio, this downward trend would materially impact Endo's entire Generic division.

11.     The Registration Statement did not present an accurate picture of Qualitest's existing business prospects.  Instead, the Registration Statement presented Qualitest's business in consistently positive terms. For example, the Prospectus Supplement stated that, "[w]ith the addition of Par's product portfolio and R&D pipeline, *our already rapidly growing generics business unit* is expected to become one of the largest and fastest growing in the industry . . . ." Similarly, the Prospectus Supplement stated that the acquisition of Qualitest, among others, had "redefined [Endo's] position in the healthcare marketplace and *successfully diversified [Endo's] product base*," omitting again any reference to the sustained and serious downward trends that were then impacting Endo's Generic division.

12.     Investors did not learn the truth about Qualitest's shaky prospects until a series of disclosures in early 2016 revealed that Endo's Generic division was suffering from a "rapidly eroding" market, due in part to the "hydrocodone upscheduling."  When investors learned of the problems facing Qualitest's business, Endo's stock price plummeted, falling in a series of drops to $16.17 per share after investors learned the full truth.

13.     As of the commencement of this action, Endo common stock traded at $14.30, 83% less than the $83.25 per share Offering price.

5

## II.    JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over the causes of action asserted herein pursuant to 42 Pa. C.S. § 931(a).  The amount in controversy exceeds $50,000, exclusive of interest and costs, the jurisdictional amount, because this case is a proceeding in which exclusive jurisdiction is not vested by law in another court.

15.    This Court has personal jurisdiction over each of the Defendants named herein pursuant to 42 Pa.C.S.A. § 5322(a) and 42 Pa.C.S.A. § 5301.  Each of the Defendants conducted business in, were citizens of, and/or had designated a registered agent to accept service of process on their behalf in the Commonwealth of Pennsylvania at the time of the Offering.  Endo has maintained its principal executive offices in this state at all relevant times herein, and each of the Individual Defendants, as defined herein: (1) resides in this state and/or county; (2) works in this state and/or county; (3) served as a director of Endo, a Pennsylvania-headquartered company at the time of the Offering; and/or (4) exercised a demand registration right pursuant to a stockholder agreement with a Pennsylvania-headquartered company at the time of the Offering.  Each of the Underwriter Defendants, as defined herein: (1) maintains an office in this state and/or county; and/or (2) conducts significant business in this state, including business related to the Offering.  The violations of law complained of herein occurred in this state, including the preparation and dissemination of the materially false and misleading Offering Documents complained of herein, which statements were disseminated in this state.

16.    This action is not subject to removal.  The claims alleged herein arise under Sections 11, 12(a)(2), and 15 of the Securities Act.  *See* 15 U.S.C. §§ 77*k*, 77*l*(a)(2), and 77*o*.  Jurisdiction is conferred by and venue is proper pursuant to Section 22 of the Securities Act, which states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United

6

States."  Section 16(c) applies to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims under state statutory or common law.  This action is based upon federal law and, consequently, is not a "covered class action" under Section 16 and therefore is not removable to federal court.

17.     Venue in this Court is proper under Rules 1006 and 2179 of the Pennsylvania Rules of Civil Procedure because Defendants' wrongful acts arose in and emanated from this county.  Each of the Defendants has an office or residence in this County and/or conducts significant business in this County.

## III.    PARTIES

18.     Plaintiff Mississippi PERS was established in 1952 and provides retirement and related benefits for all Mississippi state and public education employees, officers of the Mississippi Highway Safety Patrol, and certain elected officials, among others.  As of January 2017, Mississippi PERS oversaw more than $28 billion on behalf of more than 395,000 members and their beneficiaries.  Mississippi PERS purchased Endo common stock from an Underwriter Defendant in the Offering and pursuant to the Registration Statement and was damaged as a result of Defendants' wrongdoing as alleged herein.

19.     Defendant Endo develops, manufactures, and distributes pharmaceutical products and devices worldwide. The Company's stock is listed and trades on the NASDAQ Global Exchange under the ticker symbol "ENDP."

20.     Defendant Rajiv Kanishka Liyanaarchchie De Silva ("De Silva") served as Chief Executive Officer, President and a Director of Endo from February 25, 2013 to September 23, 2016, when he resigned and was replaced by Paul Campanelli, the head of Endo's Generic division.

7

21.     Defendant Suketu P. Upadhyay ("Upadhyay") served at all relevant times as Chief Financial Officer and Executive Vice President of Endo.

22.     Defendant Daniel A. Rudio served at all relevant times as Vice President and Controller of Endo.

23.     Defendant Roger H. Kimmel served at all relevant times as a member and Chairman of Endo's Board of Directors.

24.     Defendant Shane M. Cooke served at all relevant times as a member of Endo's Board of Directors.

25.     Defendant John J. Delucca served at all relevant times as a member of Endo's Board of Directors.

26.     Defendant Arthur J. Higgins served at all relevant times as a member of Endo's Board of Directors.

27.     Defendant Nancy J. Hutson, Ph.D, served at all relevant times as a member of Endo's Board of Directors.

28.     Defendant Michael Hyatt served at all relevant times as a member of Endo's Board of Directors.

29.     Defendant William P. Montague served at all relevant times as a member of Endo's Board of Directors.

30.     Defendant Jill D. Smith served at all relevant times as a member of Endo's Board of Directors.

31.     Defendant William F. Spengler served at all relevant times as a member of Endo's Board of Directors.

32.     The defendants referenced above in ¶¶ 20–31 are sometimes collectively referred to herein as the "Individual Defendants." Each of the Individual Defendants signed the Registration Statement (as defined herein) and/or otherwise participated in the drafting and dissemination of the Registration Statement.

33.     Defendant Goldman, Sachs & Co. ("Goldman Sachs") is a financial services company that acted as an underwriter of the Offering. Goldman Sachs acted as a representative of the underwriters and was allocated 5,405,407 shares. Goldman Sachs participated in the drafting and dissemination of the Registration Statement.

34.     J.P. Morgan Securities LLC ("J.P. Morgan") is a financial services company that acted as an underwriter of the Offering. J.P. Morgan acted as a representative of the underwriters and was allocated 5,405,407 shares. J.P. Morgan participated in the drafting and dissemination of the Registration Statement.

35.     Barclays Capital Inc. ("Barclays") is a financial services company that acted as an underwriter of the Offering. Barclays participated in the drafting and dissemination of the Registration Statement. Barclays acted as a representative of the underwriters and was allocated 5,405,407 shares.

36.     Deutsche Bank Securities Inc. ("Deutsche Bank") is a financial services company that acted as an underwriter of the Offering. Deutsche Bank participated in the drafting and dissemination of the Registration Statement. Deutsche Bank acted as a representative of the underwriters and was allocated 5,405,407 shares.

37.     RBC Capital Markets, LLC ("RBC") is a financial services company that acted as an underwriter of the Offering and was allocated 506,766 shares. RBC participated in the drafting and dissemination of the Registration Statement.

9

38.     Citigroup Global Markets Inc. ("Citigroup") is a financial services company that acted as an underwriter of the Offering and was allocated 506,766 shares.  Citigroup participated in the drafting and dissemination of the Registration Statement.

39.     Morgan Stanley & Co. LLC ("Morgan Stanley") is a financial services company that acted as an underwriter of the Offering and was allocated 506,766 shares.  Morgan Stanley participated in the drafting and dissemination of the Registration Statement.

40.     SunTrust Robinson Humphrey, Inc. ("SunTrust") is a financial services company that acted as an underwriter of the Offering and was allocated 294,033 shares.  SunTrust participated in the drafting and dissemination of the Registration Statement.

41.     TD Securities (USA) LLC ("TD Securities") is a financial services company that acted as an underwriter of the Offering and was allocated 294,033 shares.  TD Securities participated in the drafting and dissemination of the Registration Statement.

42.     Mitsubishi UFJ Securities (USA), Inc. ("Mitsubishi") is a financial services company that acted as an underwriter of the Offering and was allocated 294,033 shares.  Mitsubishi participated in the drafting and dissemination of the Registration Statement.

43.     The defendants named in paragraphs 33–42 are referred to herein as the "Underwriter Defendants."  Plaintiff and other members of the Class purchased Endo common stock from the Underwriter Defendants on the Offering.  Pursuant to the Securities Act, the Underwriter Defendants are liable for false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize in, *inter alia*, underwriting public offerings of securities.  They served as the underwriters of the Offering and received approximately $63.25 million in the Offering through an underwriting

discount of $1.3736 per share. The Underwriter Defendants determined that in return for their share of the Offering proceeds, they were willing to merchandize Endo stock in the Offering. The Underwriter Defendants marketed the Offering and presented favorable information about the Company, its operations, and its financial prospects;

        (b)     The Underwriter Defendants requested and obtained an agreement from Endo that the Company would indemnify and hold harmless the Underwriter Defendants from certain liabilities, including liabilities under the federal securities laws, or to contribute to payments the Underwriter Defendants may be required to make in respect to those liabilities;

        (c)     Representatives of the Underwriter Defendants assisted Endo and the Individual Defendants in planning the Offering including discussions regarding the following: (i) the strategy to best accomplish the Offering; (ii) the terms of the Offering, including the price at which Endo stock would be offered to the public; (iii) the language to be used in the Registration Statement; and (iv) the disclosures regarding Endo and its business that would be made in the Registration Statement. As a result of this course of conduct and communication between the Underwriter Defendants' representatives and the Company's management and senior executives, the Underwriter Defendants, in the exercise of reasonable care should have known of the existence, scope, and extent of the then-current trend of pricing pressure that Endo was experiencing, as well as the resulting effect of that trend on the Company's outlook for revenue growth; and

        (d)     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Endo and Its Business

44.    Defendant Endo describes itself as a global specialty pharmaceutical company that develops, manufactures and distributes pharmaceutical products and devices worldwide. At the time of the Offering, the Company had three major business segments: U.S. Branded Pharmaceuticals (the "Branded division"), U.S. Generic Pharmaceuticals (the "Generic division"), and International Pharmaceuticals.

45.    Endo maintains its U.S. headquarters in Malvern, Pennsylvania.  In 2014, Endo acquired a Canadian company, Paladin, and through a complicated scheme known as a "reverse-merger," re-registered as a private limited company in Ireland as Endo International plc to avoid paying full U.S. taxes going forward.  Despite nominally being an Irish corporation, Endo's executive offices and "nerve center" remains in Malvern.  Defendants euphemistically refer to this arrangement as part of their "tax strategy."

### B.    Negative Trends in Endo's Important Generic Division

46.    By 2015, the Generic division, which was primarily contained within the Company's Qualitest subsidiary, had become a key revenue driver for the Company, generating approximately 50% of Endo's revenues in the first quarter of 2015.  The Generic division, in turn, derived much of its revenue from pain medications and controlled substances—approximately 53% of revenues in 2014.

47.    At the time of the Offering, however, the market for Endo's pain and controlled substances products was eroding.  In late 2014 and early 2015, prescriptions for these opioid-based pain medications were declining for the first time in decades, as doctors responded to an epidemic in opioid addiction and the federal government reclassified, or "up-scheduled," hydrocodone, the active ingredient in the most popular opioid-based pain relievers in October

12

2014—often referred to as the "hydrocodone up-scheduling." The *New York Times* has since reported that while prescriptions for these drugs began a gradual decline in 2013 and 2014, they dropped sharply in 2015 following the up-scheduling, stating that "[i]n the first year after the measure took effect, dispensed prescriptions declined by 22 percent, and pills by 16 percent, according to an analysis in JAMA Internal Medicine. Refills—which the change made much more difficult—accounted for 73 percent of the decline."[1] According to data reviewed and reported by the Institute for Safe Medication Practices, the drop began in the last quarter of 2014 and had fallen the full 20% by the first quarter of 2015.[2] Endo's highest selling generic drugs were combinations of hydrocodone and acetaminophen (a combination marketed under the brand name Vicodin). While Endo sold multiple drugs containing hydrocodone, following the Company's later admissions, an analyst pulled the data for just one, a low-dose version of generic Vicodin, and found that the sales had dropped 44%, from 2014 to 2015, with total prescriptions declining 35% over the same period.

48. Despite the dramatic drop in prescriptions and sales, Endo limited its discussion of the impact of the hydrocodone up-scheduling to passing mention in its 2014 annual report filed with the SEC on Form 10-K on March 2, 2015 and later incorporated by reference into the Registration Statement (the "2014 10-K"). In the 2014 10-K, Endo stated that, "[t]he rescheduling of hydrocodone will impose additional access restrictions of these products and *could* ultimately impact our sales." This statement omitted, as should have been apparent to Defendants in March of 2015, that prescriptions began to trend downward in late 2014.

---

[1] Abby Goodnough and Sabrina Tavernise, "Opioid Prescriptions Drop for the First Time in Two Decades," NEW YORK TIMES, May 20, 2016, *available at* https://www.nytimes.com/2016/05/21/health/opioid-prescriptions-drop-for-first-time-in-two-decades.html
[2] Institute for Safe Medication Practices, "Annual Report Issue," QUARTERWATCH, June 29, 2016, *available at* https://www.ismp.org/quarterwatch/pdfs/2015Q4.pdf

49.     By June 4, 2015, when Endo issued the Prospectus Supplement, the hydrocodone market had been down for nearly two quarters, with sharp declines in prescriptions following the up-scheduling. Yet Defendants failed to update the earlier risk warning to disclose the presently-occurring negative trend in the demand for its important hydrocodone drugs, including generic Vicodin.

50.     Indeed, instead of disclosing the disruption to its pain portfolio and the diminishing prescriptions, the Prospectus Supplement described the Generic division as "***Capitalizing on encouraging demand trends for a differentiated portfolio of controlled substances and liquids***." Endo did not report sales for individual generic drugs in its SEC filings, and revenue recognized from several acquisitions and new product launches in each quarter of 2015 obscured the performance of Endo's base business at the time of the Offering. Consequently, investors were unaware of this dramatic trend until the Company admitted on May 5, 2016 that it had experienced a "rapid erosion of the pain segment" in 2015, due in part to "market factors" including "hydrocodone up-scheduling." The Company also admitted that since approximately 40% of the legacy Qualitest portfolio was comprised of pain products that these market factors had a "disproportionate effect on [its] generic's business."

**C.     Qualitest's Vulnerable Business Model**

51.     At the time of the Offering, Qualitest's business model was extremely vulnerable to a dip in the market for pain medications. As Campanelli, then head of the Generic division, admitted in May 2016, "approximately 40% of the legacy Qualitest portfolio was comprised of pain products. So this sector-specific weakness has had a disproportionate effect on our generics business."

52.     Just as investors were unaware that the market for Qualitest's drugs was eroding, they were unaware that Qualitest's portfolio was so concentrated. On May 5, 2015, Endo filed a

14

quarterly report on Form 10-Q with the SEC (the "1Q2015 10-Q").  In that filing, the Company stated that "[o]ur U.S. Generic Pharmaceuticals segment consists of products primarily focused in pain management through a ***differentiated portfolio of controlled substances and liquids that have one or more barriers to market entry***, such as complex formulation, regulatory or legal challenges or difficulty in raw material sourcing."

53.     The Registration Statement did not present an accurate picture of Qualitest's existing business prospects.  Instead, the Registration Statement presented Qualitest's business in consistently positive terms. Specifically, the Prospectus Supplement stated that, "With the addition of Par's product portfolio and R&D pipeline, ***our already rapidly growing generics business unit*** is expected to become one of the largest and fastest growing in the industry . . . ." The Prospectus Supplement also stated that the acquisition of Qualitest, among others, had "redefined [Endo's] position in the healthcare marketplace and ***successfully diversified [Endo's] revenue base***."

**D.     Materially Misleading Statements and Omissions Made in Connection with the Offering**

54.     On May 18, 2015, Endo filed a press release with the SEC on Form 8-K announcing that it had entered into a definitive agreement under which Endo would acquire privately held Par from TPG in a transaction valued at $8.05 billion, including the assumption of Par debt. The purchase price consisted of approximately 18 million shares ($1.55 billion of value based on the 10-day volume weighted average share price of Endo ending on May 15, 2015) of Endo equity and $6.50 billion cash consideration to Par shareholders. Endo stated that it secured fully committed financing from Deutsche Bank and Barclays to fund the cash consideration. The press release stated: "***[t]he combination will create a leading specialty pharmaceutical company with a generics business that is one of the industry's fastest growing and among the***

*top five as measured by U.S. sales.* It is also expected to help drive long-term double-digit revenue growth for Endo." The May 18, 2015 8-K, which was incorporated by reference into the Registration Statement, did not qualify its description of the anticipated benefits of the acquisition with a discussion of the then-current negative trends threatening Endo's Generic division.

55.     On June 2, 2015, Endo issued a registration statement on Form S-3 and accompanying Prospectus using a "shelf" registration, or continuous offering process with the SEC. On June 4, 2015, the Company released a Prospectus Supplement, which incorporated the Prospectus (together, the "Prospectus Supplement"). The Prospectus Supplement incorporated by reference certain SEC filings, including the 2014 10-K, the quarterly report for the first quarter of 2015 on Form 10-Q (the "1Q2015 10-Q"), and the May 18, 2015 8-K. The Prospectus, Prospectus Supplement, and documents incorporated by reference therein are part of the registration statement on Form S-3 (File No. 333-204657), and are collectively referred to herein as the "Registration Statement."

### 1.     Misleading Statements and Omissions in the Documents Incorporated by Reference

56.     The Company filed its 2014 10-K on March 2, 2015. In the 2014 10-K, the Company described Endo's Generic division, stating: "***Our U.S. Generic Pharmaceuticals segment consists of products primarily focused in pain management through a differentiated portfolio of controlled substances and liquids that have one or more barriers to market entry***, such as complex formulation, regulatory or legal challenges or difficulty in raw material sourcing."

57.     On May 11, 2015, the Company filed its 1Q2015 10-Q. Instruction 7 to Item 303(b) of Regulation S-K, 17 C.F.R. § 229.303(b), required Endo to include any "material

changes" since the last annual report. As such, the 1Q2015 10-Q should have disclosed the over 20% drop in nationwide prescriptions for hydrocodone-based medications, a negative trend that materially impacted the Generic division's hydrocodone products, including its low-dose version of generic Vicodin, which experienced a 44% drop in sales and a 35% decline in prescriptions from 2014 to 2015, since hydrocodone drugs were the Generic division's highest-selling category.

### 2.     Misleading Statements and Omissions in the Registration Statement

58.     The Registration Statement was negligently prepared, and, as a result, contained untrue statements of material facts and/or omitted to state facts necessary to make the statements made not misleading.

59.     Specifically, the Prospectus Supplement described the Company's Generic division follows:

> U.S. Generic Pharmaceuticals: ***Capitalizing on encouraging demand trends for a differentiated portfolio of controlled substances and liquids*** and more effective research and development ("R&D") investment by targeting low-risk, high-return opportunities in generics. We believe the acquisition of Par will enhance our existing generics platform, adding scale and diversity in products, capabilities and R&D infrastructure.

60.     However, the Prospectus Supplement's positive portrayal of "***encouraging demand trends for a differentiated portfolio of controlled substances***" misleadingly failed to disclose that the Company was actually experiencing then-current negative trends in the market for its pain and controlled substance drugs or the effects of these trends on the Company's sales growth or outlook.

61.     The Prospectus Supplement further stated that, "As a result of a series of strategic actions combined with strategic investments in our core business, we have redefined our position in the healthcare marketplace and successfully diversified our revenue base. Our acquisitions of

17

Qualitest, Paladin and Auxilium have also contributed to our diversification. *The acquisition of Qualitest enabled us to gain critical mass in our generics business.*" With regards to the acquisition, the Prospectus Supplement stated that, "With the addition of Par's product portfolio and R&D pipeline, *our already rapidly growing generics business unit* is expected to become one of the largest and fastest growing in the industry, with strong revenue growth over the long-term and a broad product pipeline."

62.     However, the Prospectus Supplement's portrayal of Qualitest as an "*already rapidly growing*" business unit and as having enabled the company to "*gain critical mass*" misleadingly failed to disclose that demand for products in Qualitest base business began to rapidly erode in the first quarter of 2015.

### 3.     Defendants Duty to Disclose Material Information in the Registration Statement

63.     Under the rules and regulations governing the preparation of the Registration Statement, Defendants were required to disclose the adverse facts detailed herein. No such disclosure was made.

64.     Specifically, under Item 11 on the Form S-3, Endo was required to describe "any and all material changes in the registrant's affairs which have occurred since the end of the latest fiscal year. . . ." This requirement must be read in conjunction with Form S-3's instructions that the registrant comply with Regulation S-K and incorporate by reference certain SEC filings, including the most recent annual report on Form 10-K. Thus, Defendants were required to consider whether there had been any material changes to Endo's business regarding information that was subject to disclosure in the Form 10-K, including the disclosures required by Item 303 of Regulation S-K, 17 C.F.R. § 229.303. Specifically, Item 303, and the SEC's related interpretive releases thereto, requires issuers to disclose events or uncertainties, including any

known trends that have had or are reasonably likely to cause the registrant's financial information not to be indicative of future operating results. As detailed above, Defendants negligently failed to disclose in the Registration Statement, or the documents incorporated therein by reference, then-occurring negative trends in the demand for key products in Endo's generic portfolio. Nor did Defendants disclose that the concentration of Endo's Generic division meant that it was particularly vulnerable to negative trends in the market for certain pain medications.

65. Moreover, pursuant to SEC Regulation C, Endo was required to disclose material information necessary to ensure that representations in the Registration Statement were not misleading. Specifically, Rule 408, 17 C.F.R. § 230.408(a), states that "[i]n addition to the information expressly required to be included in a registration statement, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading." As detailed above, Defendants negligently failed to qualify certain statements in the Registration Statement, or the documents incorporated therein by reference, about the Company's business prospects with material information necessary to make those statements not misleading.

66. Item 3 of Form S-3 also required that the Registration Statement furnish the information called for under Item 503 of Regulation S-K, 17 C.F.R. § 229.503, including, among other things, a "discussion of the most significant factors that make the offering speculative or risky." As discussed above, the risk disclosures in the Registration Statement negligently failed to advise investors about significant, then-existing (as opposed to potential) factors that made the Offering more speculative or risky than the Registration Statement disclosed.

67.    On June 4, 2015, Endo priced the offering at $83.25 per share and announced an upsizing of the Offering to 24,024,025 ordinary shares (not including the underwriters' overallotment of 3,603,603 shares).  The Offering closed on or about June 10, 2015 and was successful for the Company and the Underwriter Defendants.  Endo sold all 27,627,628, raising more than $2.3 billion in gross proceeds.  Plaintiff and other members of the Class purchased Endo common stock pursuant to the Registration Statement.

**E.    Post Offering Disclosures Reveal the Truth**

68.    The false and misleading nature of Endo's Registration Statement was revealed in part on February 29, 2016, when Endo issued a press release announcing its financial results for the fourth quarter of 2015. For the quarter, Endo reported a net loss of $118.46 million, or $0.53 per diluted share, on revenue of $1.07 billion, compared to a net loss of $53.48 million, or $0.34 per diluted share, on revenue of $662.88 million for the same period in the prior year.

69.    That same day, the Company hosted a conference call for investors and analysts to discuss these results.  During the call, Defendant De Silva acknowledged "volume loss and pricing pressure" in the Company's generic business, which he attributed to "increased competition in multi-player categories." Defendant De Silva explained, in pertinent part, as follows:

> ***The legacy Qualitest business, while diversified and historically insulated from the challenging pricing environment, did experience some volume loss and pricing pressure in the fourth quarter due to increased competition in multi-player categories. While we have seen volume decline in some areas of this business, it is important to note that 80% of Qualitest's extended unit loss in the full year 2015 versus prior year was driven by only a handful of products that correspond to approximately 20% of Qualitest's reported net sales in 2014.***

70.    During the call Defendant Upadhyay disclosed the existence of pricing pressure in the generics business in 2015. The following exchange took place:

20

**Randall S. Stanicky** – *RBC Capital Markets* – *Analyst*

Great. Thanks. Rajiv, or maybe this is better for Paul, can you just expand on the pricing headwinds you're seeing and factoring in? Most of your larger peers are talking about a similar erosion level this year to last year despite what is an expectation of greater approvals. So can you help us understand the Qualitest impact from Q4 how-- if that's likely to continue and then what type of erosion are you expecting in the business for this year?

*            *            *

**Suky Upadhyay** – *Endo International plc* – *CFO*

Good morning, Randall. The first thing I would say is, into the fourth quarter when we gave preliminary results around 2015, that did imply some softness in 2015 fourth quarter around generics. ***We did start to see the early signs of some volume erosion in our more commoditized parts of our business. And then as we closed out our final processes for the year, we did recognize higher level of charge-backs and rebates coming through, specifically around our more commoditized portfolio as well as our pain franchise.***

71.    Analysts pressed further to understand the Company's weakness in the generic segment, questioning whether Endo had been experiencing pricing pressure throughout 2015, as other pharmaceutical companies had. Defendant De Silva explained that Endo had "somewhat anticipated" weak results in the pain market generally—a fact not previously disclosed in the Registration Statement. The following exchange took place:

**Marc Goodman** – *UBS* – *Analyst*

I'm just trying to understand on the Generics business, the pricing that you're talking about, there's one aspect of it which is the commodity pricing, but then there's the other aspect, which is the pain products, which have been really important for you. ***The question is, we've heard from other companies in this space and they were complaining about new players coming back last year and they were complaining about pricing in that market and they were having some troubles there, and yet Endo was not complaining at all at that time and now there seems to be a delayed impact***. So I'm trying to understand why is that?

*            *            *

21

**Rajiv De Silva** – *Endo International plc – President & CEO*

*So although we've taken some substantial volume declines in our pain portfolio, they are somewhat anticipated based on the price increases we took and the approach we've taken.* So net-net from a value standpoint, we are actually pleased with how the pain portfolio has performed. *But is there pricing pressure in pain, as well as the commodity portfolio? The answer is, yes, because there are smaller players who tend to be aggressive even in the pain arena now, most of them have been in the past.*

72.     In response to this news, on February 29, 2016, the price of Endo stock declined from $52.94 per share to $41.81 per share—a decline of 21%, on extremely heavy trading volume.

73.     The false and misleading nature of Endo's Registration Statement was further revealed on March 17, 2016 at the Barclays Global Healthcare Conference, when Defendants announced weaker-than-expected annual revenue guidance for the first quarter of 2016. During his remarks, Defendant De Silva acknowledged continued pricing pressures in the Qualitest business, explaining in pertinent part, as follows:

*We do continue to see continued price pressure in Q1, particularly around the Qualitest business. If you look across the portfolio of today's business between Qualitest and Par, we do see a little bit more softness in the Qualitest side of the business than we expected. That being said, from a broader full-year perspective, our plan is well intact.*

74.     In response to this news, the price of Endo stock declined from $33.91 per share to $30.03 per share—a decline of 11.4% on extremely heavy trading volume.

75.     The full scope of the false and misleading nature of Endo's Registration Statement was finally revealed on May 5, 2016, when Endo issued a press release after the market closed announcing its financial results for the first quarter of 2016, the period ended March 31, 2016.  In the press release, Endo reported a loss of $0.40 per diluted share, down from earnings of $0.85 per share in the first quarter of 2015. Additionally, Endo significantly cut its

2016 earnings and revenue guidance, announcing targeted revenue in the range of $3.87 billion to $4.03 billion, down from the range of $4.32 billion to $4.52 billion that the Company had reaffirmed in March, less than two months earlier.

76.     Following the Company's downward guidance revision, the Company hosted a conference call to discuss the release. During the call, Defendant De Silva finally admitted that there had been a "*deeper than expected erosion in the legacy Qualitest business[.]*" Further, Defendant De Silva explained as follows: "*[i]n our generics segment, the base business erosion continued into the first quarter and was significantly deeper than we expected at approximately 30%. This was driven by continued pricing and competitive pressures on our commoditized and pain products*."

77.     Also during the call, Paul Campanelli, the head of the new combined Generic division, attributed Endo's lowered revenues and guidance to "price erosion," which had been "*particularly acute in the more commodity like product categories, such as our pains and control[led] substances portfolio and our immediate release solid oral dosage forms.*" Campanelli described a "*rapid erosion of the pain segmen*t," and referenced an investor presentation prepared by the Company that attributed the erosion to, among other things, "*contraction due to several market factors (e.g. hydrocodone up-scheduling).*" Campanelli further stated that, "*[a]s you may know, approximately 40% of the legacy Qualitest portfolio was comprised of pain products. So this sector-specific weakness has had a disproportionate effect on our generic's business.*" As discussed above, the federal government up-scheduled hydrocodone in October 2014, which caused a sharp drop in opioid prescriptions in the first quarter of 2015, a trend that should have been disclosed in the Registration Statement.

78.     Defendant Upadhyay further explained that the weakness in Endo's Generic division was the reason that the Company had decreased its financial guidance for 2016 by 11%, stating that "the largest driver of the change is the greater-than-expected erosion in our generic's base business.  As a reminder, we define base generics as extended release, immediate release, and pain and control substance products."

79.     In response to this news, the price of Endo stock dropped from $26.59 per share to $16.17 per share—a decline of 39%, on heavy trading volume.

## V.     CLASS ACTION ALLEGATIONS

80.     Plaintiff brings this action as a class action pursuant to Rules 1702, 1708(a) and 1709 of the Pennsylvania Rules of Civil Procedure on behalf of a class consisting of all those persons and entities that purchased or otherwise acquired Endo common stock pursuant to the Registration Statement issued in connection with the Offering, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants and members of the immediate families of any Defendant who is an individual; the officers, directors, and affiliates of Defendants, at all relevant times; any entity in which Defendants have or had a controlling interest; Endo's employee retirement and/or benefit plan(s) and their participants and/or beneficiaries to the extent they purchased or acquired Endo common stock through any such plan(s); and the legal representatives, heirs, successors or assigns of any excluded person or entity.

81.     The members of the Class are so numerous that joinder of all members is impracticable.  The exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery.  Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Endo or its transfer agent and may be notified of

the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

82.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law as set forth herein.

83.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

84.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated the Securities Act;

(b)     whether the Registration Statement was negligently prepared and contained inaccurate statements of material fact and/or omitted material information required to be stated therein; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

85.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## VI.   CAUSES OF ACTION

### COUNT I
### FOR VIOLATION OF § 11 OF THE SECURITIES ACT
### <u>Against All Defendants</u>

86.     Plaintiff incorporates paragraphs 1 through 85 by reference.

87.     This Cause of Action is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.  Plaintiff does not claim that any of the Defendants committed intentional or reckless misconduct or that any of the Defendants acted with scienter or fraudulent intent. This claim is based solely on negligence and/or strict liability.

88.     The Registration Statement issued in connection with the Offering contained untrue statements of material facts, or omitted to state material facts necessary to make the statements made not misleading, or that were required to be stated therein.

89.     Defendant Endo is the registrant for the Offering. As such, Endo is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate. By virtue of the Registration Statement containing material misrepresentations and omissions of material fact necessary to make the statements therein not false and misleading, Endo is liable under Section 11 of the Securities Act to Plaintiff and the Class.

90.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

91.     The Individual Defendants each signed the Registration Statement either personally or through an attorney-in-fact and/or caused its issuance.  The Individual Defendants each had duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They each had a duty to ensure that such

statements were true and accurate and that there were no omissions of material fact that would make the statements misleading. By virtue of each of the Individual Defendants' failure to exercise reasonable care, the Registration Statement contained misrepresentations of material facts and omissions of material facts necessary to make the statements therein not misleading. As such, each of the Individual Defendants is liable under Section 11 of the Securities Act to Plaintiff and the Class.

92.    Each of the Underwriter Defendants, as an underwriter of the securities offered in the Offering pursuant to the Registration Statement, had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They each had a duty to ensure that such statements were true and accurate and that there were no omissions of material fact that would make the statements misleading. By virtue of each of the Underwriter Defendants' failure to exercise reasonable care, the Registration Statement contained misrepresentations of material facts and omissions of material facts necessary to make the statements therein not misleading. As such, each of the Underwriter Defendants is liable under Section 11 of the Securities Act to Plaintiff and the Class.

93.    None of the untrue statements or omissions of material fact in the Registration Statement alleged herein was a forward-looking statement.  Rather, each such statement concerned existing facts. Moreover, the Registration Statement did not properly identify any of the untrue statements as forward-looking statements and did not disclose information that undermined the putative validity of those statements.

94.    By reason of the conduct herein alleged, each Defendant named in this Count violated, and/or controlled a person who violated, Section 11 of the Securities Act.

27

95.     Plaintiff purchased Endo common stock from an Underwriter Defendant pursuant to the Offering.

96.     Plaintiff and the Class have sustained damages.  The value of Endo common stock has declined substantially subsequent to and due to Defendants' violations.

97.     At the time of their purchases of Endo common stock, Plaintiff and other members of the Class did not know the true facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures alleged herein. Less than one year has elapsed between the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based and the time that Plaintiff commenced this action.  Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff commenced this action.

## COUNT II
## FOR VIOLATION OF § 12(a)(2) OF THE SECURITIES ACT
## <u>Against All Defendants</u>

98.     Plaintiff incorporates paragraphs 1 through 85 by reference.

99.     By means of the defective Prospectus Supplement, the Company, the Individual Defendants, and the Underwriter Defendants promoted and sold Endo common stock to Plaintiff and other members of the Class.

100.    The Prospectus Supplement contained untrue statements of material fact, and concealed and failed to disclose material facts, as set forth herein.  The Company, the Individual Defendants, and the Underwriter Defendants owed Plaintiff and the other members of the Class who purchased Endo common stock pursuant to the Prospectus Supplement the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus Supplement to

28

ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. The Company, the Individual Defendants, and the Underwriter Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus Supplement as set forth above.

101.    Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus Supplement at the time that Plaintiff acquired Endo common stock.

102.    By reason of the conduct alleged herein, the Company, the Individual Defendants, and the Underwriter Defendants violated Section 12(a)(2) of the Securities Act. As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Endo common stock pursuant to the Prospectus Supplement sustained damages in connection with their purchases of the stock. Accordingly, those members of the Class who continue to hold Endo common stock issued pursuant to the Prospectus Supplement have the right to rescind and recover the consideration paid for their shares, and hereby tender their common stock to the Company, the Individual Defendants, and/or the Underwriter Defendants. Plaintiff and other members of the Class who have sold their common stock seek damages to the extent permitted by law.

103.    Less than one year has elapsed between the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based and the time that Plaintiff commenced this action. Less than three years has elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time that Plaintiff commenced this action.

## COUNT III
## FOR VIOLATION OF § 15 OF THE SECURITIES ACT
### Against the Individual Defendants

104.    Plaintiff incorporates paragraphs 1 through 85 by reference.

105.    This cause of action is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of the Class, against each of the Individual Defendants. Plaintiff does not claim that any of the Defendants committed intentional or reckless misconduct or that any of the Defendants acted with scienter or fraudulent intent. This claim is based solely on negligence and/or strict liability.

106.    The Individual Defendants each were control persons of Endo by virtue of their positions as directors and/or senior officers of the Company.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Endo.  Endo controlled the Individual Defendants and all of the Company's employees.

107.    Each of the Individual Defendants participated in the preparation and dissemination of the Registration Statement, and otherwise participated in the process necessary to conduct the IPO.  Because of their positions of control and authority as senior officers and/or directors each of the Individual Defendants were able to, and did, control the contents of the Registration Statement, which contained materially untrue information and/or omitted material information required to be disclosed to prevent the statements made therein from being misleading.

108.    As control persons of Endo, each of the Individual Defendants is liable jointly and severally with and to the same extent as Endo for its violation of Section 11 of the Securities Act.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

30

A.      Determining that this action is a proper class action, certifying Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding rescission or a rescissory measure of damages; and

D.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

E.      Awarding such other relief including equitable and/or injunctive relief as deemed appropriate by the Court.

## VIII.   JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all issues so triable.

DATED: February 28, 2017

GOLDMAN SCARLATO & PENNY, P.C.

Mark S. Goldman

8 Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA  19428
Telephone:  (484) 342-0700
goldman@lawgsp.com


LABATON SUCHAROW LLP
Jonathan Gardner
Serena Hallowell
Thomas Watson
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
JGardner@labaton.com
SHallowell@labaton.com
TWatson@labaton.com

*Counsel for Plaintiffs*

## IN THE COURT OF COMMON PLEAS OF
## CHESTER COUNTY, PENNSYLVANIA

PUBLIC EMPLOYEES' RETIREMENT
SYSTEM OF MISSISSIPPI, Individually and on
Behalf of All Others Similarly Situated,

                          Plaintiff,

    vs.

ENDO INTERNATIONAL PLC; RAJIV
KANISHKA LIYANAARCHCHIE DE SILVA;
SUKETU P. UPADHYAY; DANIEL A. RUDIO;
ROGER H. KIMMEL; SHANE M. COOKE;
JOHN J. DELUCCA; ARTHUR J. HIGGINS;
NANCY J. HUTSON; MICHAEL HYATT;
WILLIAM P. MONTAGUE; JILL D. SMITH;
WILLIAM F. SPENGLER; GOLDMAN, SACHS
& CO.; J.P. MORGAN SECURITIES LLC;
BARCLAYS CAPITAL INC.; DEUTSCHE
BANK SECURITIES INC.; RBC CAPITAL
MARKETS, LLC; CITIGROUP GLOBAL
MARKETS, LLC; MORGAN STANLEY & CO.
LLC; SUNTRUST ROBINSON HUMPHREY,
INC.; TD SECURITIES (USA) LLC; and
MITSUBISHI UFJ SECURITIES (USA) INC.,

                        Defendants.

CIVIL ACTION

Case No.

CLASS ACTION

DEMAND FOR JURY TRIAL

## NOTICE TO DEFEND

      You have been sued in court.  If you wish to defend against the claims set forth in the
following pages, you must take action within twenty (20) days after this complaint and notice are
served, by entering a written appearance personally or by attorney and filing in writing with the
court your defenses or objections to the claims set forth against you.  You are warned that if you
fail to do so the case may proceed without you and a judgment may be entered against you by the
court without further notice for any money claimed in the complaint or for any other claim or
relief requested by the plaintiff.  You may lose money or property or other rights important to
you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyer Referral and Information Service
Chester County Bar Association
15 West Gay Street
West Chester, PA  19380
(610) 429-1500

IN THE COURT OF COMMON PLEAS OF
CHESTER COUNTY, PENNSYLVANIA
--------------------------------------------------------X
PUBLIC EMPLOYEE'S RETIREMENT
SYSTEM OF MISSISSIPPI, Individually and
on behalf of all others similarly situated,

           Plaintiff(s),                Case No. 2017-02081-MJ

     -against-                   AFFIDAVIT OF SERVICE

ENDO INTERNATIONAL PLC, et al,

           Defendant(s).
--------------------------------------------------------X
STATE OF NEW YORK )
                   S.S.:
COUNTY OF ALBANY )

      JEFFREY TEITEL, being duly sworn, deposes and says that he is over the age of eighteen years, is an agent of METRO ATTORNEY SERVICE INC., and is not a party to this action.

      That on the 8th day of March, 2017, at approximately 11:00 AM, deponent served a true copy of the Civil Cover Sheet, Notice to Defend and Complaint upon TD Securities (USA) LLC c/o Corporation Service Company at 80 State Street, Albany, New York, by personally delivering and leaving the same with Bonnie Yerry, Process Specialist, who informed deponent that she is an agent authorized by appointment to receive service at that address.

      Bonnie Yerry is a white female, approximately 50 years of age, stands approximately 5 feet 6 inches tall, weighs approximately 145 pounds with brown hair.

JEFFREY TEITEL

Sworn to before me this
8th day of March, 2017

NOTARY PUBLIC

HILARY TEITEL
Notary Public, State of New York
Qualified in Albany County
No. 01TE5049179
Commission Expires Sept. 11, 20 17

IN THE COURT OF COMMON PLEAS OF
CHESTER COUNTY, PENNSYLVANIA

--------------------------------------------------------X

PUBLIC EMPLOYEE'S RETIREMENT
SYSTEM OF MISSISSIPPI, Individually and
on behalf of all others similarly situated,

         Plaintiff(s),

     -against-

ENDO INTERNATIONAL PLC, et al,

         Defendant(s).

--------------------------------------------------------X

Case No. 2017-02081-MJ

AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
                        S.S.:
COUNTY OF ALBANY )

       JEFFREY TEITEL, being duly sworn, deposes and says that he is over the age of eighteen years, is an agent of METRO ATTORNEY SERVICE INC., and is not a party to this action.

       That on the 8th day of March, 2017, at approximately 11:00 AM, deponent served a true copy of the Civil Cover Sheet, Notice to Defend and Complaint upon RBC Capital Markets, LLC c/o Corporation Service Company at 80 State Street, Albany, New York, by personally delivering and leaving the same with Bonnie Yerry, Process Specialist, who informed deponent that she is an agent authorized by appointment to receive service at that address.

       Bonnie Yerry is a white female, approximately 50 years of age, stands approximately 5 feet 6 inches tall, weighs approximately 145 pounds with brown hair.

JEFFREY TEITEL

Sworn to before me this
8th day of March, 2017

NOTARY PUBLIC

HILARY TEITEL
Notary Public, State of New York
Qualified in Albany County
No. 01TE5049179
Commission E__ __ __ Sept. 11, 20 17

IN THE COURT OF COMMON PLEAS OF
CHESTER COUNTY, PENNSYLVANIA
--------------------------------------------------------X
PUBLIC EMPLOYEE'S RETIREMENT
SYSTEM OF MISSISSIPPI, Individually and
on behalf of all others similarly situated,

         Plaintiff(s),

    -against-

ENDO INTERNATIONAL PLC, et al,

         Defendant(s).
--------------------------------------------------------X
STATE OF NEW YORK   )
                   S.S.:
COUNTY OF NEW YORK)

Case No. 2017-02081-MJ

AFFIDAVIT OF SERVICE

*Filed and Attested by
PROTHONOTARY
20 Mar 2017 02:42 PM
B. Blewitt*

       OTIS OSBORNE, being duly sworn, deposes and says that he is over the age of eighteen years, is employed by the attorney service, METRO ATTORNEY SERVICE INC., and is not a party to this action.

       That on the 8th day of March, 2017, at approximately 9:23 AM, deponent served a true copy of the Civil Cover Sheet, Notice to Defend and Complaint upon Citigroup Global Markets, Inc. at 388 Greenwich Street, New York, New York, by personally delivering and leaving the same with Fern Strauss, Paralegal, who informed deponent that she is an agent authorized by appointment to receive service at that address.

       Fern Strauss is a white female, approximately 66 years of age, stands approximately 5 feet 5 inches tall, weighs approximately 160 pounds with black hair.

_____
OTIS OSBORNE #2005013

Sworn to before me this
8th day of March, 2017

_____
NOTARY PUBLIC

EVAN COHAN
NOTARY PUBLIC & ATTORNEY AT LAW
NO. 02CO4998577
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 29, 2018

*2017-02081-MJ*

IN THE COURT OF COMMON PLEAS OF
CHESTER COUNTY, PENNSYLVANIA
--------------------------------------------------------X
PUBLIC EMPLOYEE'S RETIREMENT
SYSTEM OF MISSISSIPPI, Individually and
on behalf of all others similarly situated,

        Plaintiff(s),

    -against-

ENDO INTERNATIONAL PLC, et al,

        Defendant(s).
--------------------------------------------------------X
STATE OF NEW YORK )
               S.S.:
COUNTY OF ALBANY )

Case No. 2017-02081-MJ

AFFIDAVIT OF SERVICE

*Filed and Attested by
PROTHONOTARY
20 Mar 2017 02:49 PM
B. Blewitt*

      JEFFREY TEITEL, being duly sworn, deposes and says that he is over the age of eighteen years, is an agent of METRO ATTORNEY SERVICE INC., and is not a party to this action.

      That on the 8th day of March, 2017, at approximately 11:00 AM, deponent served a true copy of the Civil Cover Sheet, Notice to Defend and Complaint upon SunTrust Robinson Humphrey, Inc. c/o Corporation Service Company at 80 State Street, Albany, New York, by personally delivering and leaving the same with Bonnie Yerry, Process Specialist, who informed deponent that she is an agent authorized by appointment to receive service at that address.

      Bonnie Yerry is a white female, approximately 50 years of age, stands approximately 5 feet 6 inches tall, weighs approximately 145 pounds with brown hair.


_____
JEFFREY TEITEL

Sworn to before me this
8th day of March, 2017


_____
NOTARY PUBLIC

HILARY TEITEL
Notary Public, State of New York
Qualified in Albany County
No. 01TE5049179
Commission Expires Sept. 11, 20 1 7

IN THE COURT OF COMMON PLEAS OF
CHESTER COUNTY, PENNSYLVANIA
--------------------------------------------------------X
PUBLIC EMPLOYEE'S RETIREMENT
SYSTEM OF MISSISSIPPI, Individually and
on behalf of all others similarly situated,

        Plaintiff(s),

    -against-

ENDO INTERNATIONAL PLC, et al,

        Defendant(s).
--------------------------------------------------------X
STATE OF NEW YORK   )
                     S.S.:
COUNTY OF NEW YORK)

Case No. 2017-02081-MJ

AFFIDAVIT OF SERVICE

*Filed and Attested by
PROTHONOTARY
20 Mar 2017 02:45 PM
B. Blewitt*

      OTIS OSBORNE, being duly sworn, deposes and says that he is over the age of eighteen years, is employed by the attorney service, METRO ATTORNEY SERVICE INC., and is not a party to this action.

      That on the 8th day of March, 2017, at approximately 11:10 AM, deponent served a true copy of the Civil Cover Sheet, Notice to Defend and Complaint upon MUFG Securities Americas Inc. at 1221 Avenue of the Americas, 6th Floor, New York, New York, by personally delivering and leaving the same with Winston Kitchingham, Legal Department, who informed deponent that he is an agent authorized by appointment to receive service at that address.

      Winston Kitchingham is a white male, approximately 38 years of age, stands approximately 5 feet 6 inches tall, and weighs approximately 170 pounds with brown hair.

_____
OTIS OSBORNE #2005013

Sworn to before me this
8th day of March, 2017

_____
NOTARY PUBLIC

EVAN COHAN
NOTARY PUBLIC & ATTORNEY AT LAW
NO. 02CO4998577
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 29, 2018

*2017-02081-MJ*

IN THE COURT OF COMMON PLEAS OF
CHESTER COUNTY, PENNSYLVANIA
-------------------------------------------------------------X

PUBLIC EMPLOYEE'S RETIREMENT
SYSTEM OF MISSISSIPPI, Individually and
on behalf of all others similarly situated,

Plaintiff(s),

-against-

ENDO INTERNATIONAL PLC, et al,

Defendant(s).
-------------------------------------------------------------X
STATE OF NEW YORK    )
                                     ) S.S.:
COUNTY OF NEW YORK)

Case No. 2017-02081-MJ

AFFIDAVIT OF SERVICE

*Filed and Attested by
PROTHONOTARY
20 Mar 2017 02:47 PM
K. Hume*

OTIS OSBORNE, being duly sworn, deposes and says that he is over the age of eighteen years, is employed by the attorney service, METRO ATTORNEY SERVICE INC., and is not a party to this action.

That on the 8th day of March, 2017, at approximately 10:39 AM, deponent served a true copy of the Civil Cover Sheet, Notice to Defend and Complaint upon Barclays Capital Inc. c/o CT Corporation Systems at 111 Eighth Avenue, New York, New York, by personally delivering and leaving the same with Elena Bou, Process Specialist, who informed deponent that she is an agent authorized by appointment to receive service at that address.

Elena Bou is a white female, approximately 31 years of age, stands approximately 5 feet 5 inches tall, weighs approximately 130 pounds with blonde hair.

_____
OTIS OSBORNE #2005013

Sworn to before me this
8th day of March, 2017

_____
NOTARY PUBLIC

EVAN COHAN
NOTARY PUBLIC & ATTORNEY AT LAW
NO. 02CO4998577
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 29, 2018

*2017-02081-MJ*

IN THE COURT OF COMMON PLEAS OF
CHESTER COUNTY, PENNSYLVANIA
--------------------------------------------------------X

PUBLIC EMPLOYEE'S RETIREMENT
SYSTEM OF MISSISSIPPI, Individually and
on behalf of all others similarly situated,

        Plaintiff(s),

      -against-

ENDO INTERNATIONAL PLC, et al,

        Defendant(s).
--------------------------------------------------------X

STATE OF NEW YORK  )
               S.S.:
COUNTY OF NEW YORK)

Case No. 2017-02081-MJ

AFFIDAVIT OF SERVICE

OTIS OSBORNE, being duly sworn, deposes and says that he is over the age of eighteen years, is employed by the attorney service, METRO ATTORNEY SERVICE INC., and is not a party to this action.

That on the 8th day of March, 2017, at approximately 10:39 AM, deponent served a true copy of the Civil Cover Sheet, Notice to Defend and Complaint upon Morgan Stanley & Co. LLC c/o CT Corporation Systems at 111 Eighth Avenue, New York, New York, by personally delivering and leaving the same with Elena Bou, Process Specialist, who informed deponent that she is an agent authorized by appointment to receive service at that address.

Elena Bou is a white female, approximately 31 years of age, stands approximately 5 feet 5 inches tall, weighs approximately 130 pounds with blonde hair.

_____
OTIS OSBORNE #2005013

Sworn to before me this
8th day of March, 2017

_____
NOTARY PUBLIC

EVAN COHAN
NOTARY PUBLIC & ATTORNEY AT LAW
NO. 02CO4998577
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 29, 2018

*2017-02081-MJ*

IN THE COURT OF COMMON PLEAS OF
CHESTER COUNTY, PENNSYLVANIA
---------------------------------------------------------------X
PUBLIC EMPLOYEE'S RETIREMENT
SYSTEM OF MISSISSIPPI, Individually and
on behalf of all others similarly situated,

        Plaintiff(s),                   Case No. 2017-02081-MJ

    -against-                    AFFIDAVIT OF SERVICE

ENDO INTERNATIONAL PLC, et al,

        Defendant(s).
---------------------------------------------------------------X
STATE OF NEW YORK  )
                       S.S.:
COUNTY OF NEW YORK)

OTIS OSBORNE, being duly sworn, deposes and says that he is over the age of eighteen years, is employed by the attorney service, METRO ATTORNEY SERVICE INC., and is not a party to this action.

That on the 8th day of March, 2017, at approximately 10:39 AM, deponent served a true copy of the Civil Cover Sheet, Notice to Defend and Complaint upon J.P. Morgan Securities LLC c/o CT Corporation Systems at 111 Eighth Avenue, New York, New York, by personally delivering and leaving the same with Elena Bou, Process Specialist, who informed deponent that she is an agent authorized by appointment to receive service at that address.

Elena Bou is a white female, approximately 31 years of age, stands approximately 5 feet 5 inches tall, weighs approximately 130 pounds with blonde hair.

_____
OTIS OSBORNE #2005013

Sworn to before me this
8th day of March, 2017

_____
NOTARY PUBLIC

EVAN COHAN
NOTARY PUBLIC & ATTORNEY AT LAW
NO. 02CO4998577
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 29, 2018

2017-02081-MJ

Metro Attorney Service Inc. 305 Broadway 9th Floor New York, New York 10007 212.822.1421 NYC DCA#1320502

IN THE COURT OF COMMON PLEAS OF
CHESTER COUNTY, PENNSYLVANIA
-------------------------------------------------------X
PUBLIC EMPLOYEE'S RETIREMENT
SYSTEM OF MISSISSIPPI, Individually and
on behalf of all others similarly situated,

        Plaintiff(s),

    -against-

ENDO INTERNATIONAL PLC, et al,

        Defendant(s).
-------------------------------------------------------X
STATE OF NEW YORK   )
                  S.S.:
COUNTY OF NEW YORK)

Case No. 2017-02081-MJ

AFFIDAVIT OF SERVICE

Filed and Attested by
PROTHONOTARY
20 Mar 2017 02:48 PM
K. Hume

        OTIS OSBORNE, being duly sworn, deposes and says that he is over the age of eighteen years, is employed by the attorney service, METRO ATTORNEY SERVICE INC., and is not a party to this action.

        That on the 8th day of March, 2017, at approximately 10:39 AM, deponent served a true copy of the Civil Cover Sheet, Notice to Defend and Complaint upon Deutsche Bank Securities Inc. c/o CT Corporation Systems at 111 Eighth Avenue, New York, New York, by personally delivering and leaving the same with Elena Bou, Process Specialist, who informed deponent that she is an agent authorized by appointment to receive service at that address.

        Elena Bou is a white female, approximately 31 years of age, stands approximately 5 feet 5 inches tall, weighs approximately 130 pounds with blonde hair.

_____
OTIS OSBORNE #2005013

Sworn to before me this
8th day of March, 2017

_____
NOTARY PUBLIC

EVAN COHAN
NOTARY PUBLIC & ATTORNEY AT LAW
NO. 02CO4998577
QUALIFIED IN ROCKLAND COUNTY
CERTIFICATE FILED IN NEW YORK COUNTY
COMMISSION EXPIRES JUNE 29, 2018

*2017-02081-MJ*



Filed and Attested by
PROTHONOTARY
22 Mar 2017 10:25 AM
A. Harris

**IN THE COURT OF COMMON PLEAS OF
CHESTER COUNTY, PENNSYLVANIA**

|  |  |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | CIVIL ACTION |
| vs. | |
| ENDO INTERNATIONAL PLC; RAJIV KANISHKA LIYANAARCHCHIE DE SILVA; SUKETU P. UPADHYAY; DANIEL A. RUDIO; ROGER H. KIMMEL; SHANE M. COOKE; JOHN J. DELUCCA; ARTHUR J. HIGGINS; NANCY J. HUTSON; MICHAEL HYATT; WILLIAM P. MONTAGUE; JILL D. SMITH; WILLIAM F. SPENGLER; GOLDMAN, SACHS & CO.; J.P. MORGAN SECURITIES LLC; BARCLAYS CAPITAL INC.; DEUTSCHE BANK SECURITIES INC.; RBC CAPITAL MARKETS, LLC; CITIGROUP GLOBAL MARKETS, LLC; MORGAN STANLEY & CO. LLC; SUNTRUST ROBINSON HUMPHREY, INC.; TD SECURITIES (USA) LLC; and MITSUBISHI UFJ SECURITIES (USA) INC., | Case No. 2017-02081-MJ |
| Defendants. | |

## ACCEPTANCE OF SERVICE

Effective March 21, 2017, I accepted service of the Complaint on behalf of Endo

International plc, Rajiv Kanishka Liyanaarchchie De Silva; Suketu P. Upadhyay; Daniel A.

Rudio; Roger H. Kimmel; Shane M. Cooke; John J. Delucca; Arthur J. Higgins; Nancy J.

Hutson; Michael Hyatt; William P. Montague; Jill D. Smith; and William F. Spengler.  I certify

that I am authorized to do so.

DATED: March 22, 2017

MORGAN, LEWIS & BOCKIUS LLP

*s/ J. Gordon Cooney, Jr.*

J. Gordon Cooney, Jr. (No. 42636)
Laura Hughes McNally (No. 310658)
1701 Market Street
Philadelphia, PA  19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
gordon.cooney@morganlewis.com
laura.mcnally@morganlewis.com


Jeff G. Hammel
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834
Telephone:  (212) 906-1260
jeff.hammel@lw.com

*Counsel for Endo International plc, Rajiv Kanishka Liyanaarchchie De Silva;  Suketu P. Upadhyay; Daniel A. Rudio; Roger H. Kimmel; Shane M. Cooke;  John J. Delucca; Arthur J. Higgins;  Nancy J. Hutson; Michael Hyatt;  William P. Montague; Jill D. Smith; and William F. Spengler*

2

*2017-02081-MJ*