# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ENDO INTERNATIONAL PLC; RAJIV KANISHKA LIYANAARCHCHIE DE SILVA; SUKETU P. UPADHYAY; DANIEL A. RUDIO; ROGER H. KIMMEL; SHANE M. COOKE; JOHN J. DELUCCA; ARTHUR J. HIGGINS; NANCY J. HUTSON; MICHAEL HYATT; WILLIAM P. MONTAGUE; JILL D. SMITH; WILLIAM F. SPENGLER; GOLDMAN, SACHS & CO.; J.P. MORGAN SECURITIES LLC; BARCLAYS CAPITAL INC.; DEUTSCHE BANK SECURITIES INC.; RBC CAPITAL MARKETS, LLC; CITIGROUP GLOBAL MARKETS, LLC; MORGAN STANLEY & CO. LLC; SUNTRUST ROBINSON HUMPHREY, INC.; TD SECURITIES (USA) LLC; and MITSUBISHI UFJ SECURITIES (USA) INC., <br><br> Defendants. | Civil Action No. 2:17-cv-01466-PD |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>PLAINTIFF'S MOTION TO REMAND</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

I.   SUMMARY OF ARGUMENT........................................................................1

II.  REPLY ARGUMENT ......................................................................................3

    A.   The Majority of Courts Around the Country Have Granted Remand on This Question ..................................................................3

    B.   State Courts Retain Jurisdiction of Securities Act Claims....................6

    C.   Section 22(a) Bars Removal of this Action.........................................10

III. CONCLUSION...............................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Breuer v. Jim's Concrete of Brevard, Inc.*,
   538 U.S. 691 (2003)......................................................................................7

*Burgess v. U.S.*,
   553 U.S. 124 (2008)....................................................................................10

*Elec. Workers Local #357 Pension v. Clovis Oncology, Inc.*,
   185 F. Supp. 3d 1172 (N.D. Cal. 2016)...........................................................7

*Fortunato v. Akebia Therapeutics Inc.*,
   183 F. Supp. 3d 326 (D. Mass. 2016)..............................................................7

*Gulf Offshore Co. v. Mobil Oil Corp.*,
   453 U.S. 473 (1981)...............................................................................2, 3, 7

*Kircher v. Putnam Funds Tr.*,
   547 U.S. 633 (2006).....................................................................5, 10, 11, 12

*Luther v. Countrywide Fin. Corp.*,
   195 Cal. App. 4th 789 (2011) .........................................................................4

*Madden v. Cowen & Co.*,
   576 F.3d 957 (9th Cir. 2009) .........................................................................4

*Mims v. Arrow Fin. Servs., LLC*,
   565 U.S. 368 (2012)......................................................................................7

**Statutes**

15 U.S.C. § 78aa(a)................................................................................................9

28 U.S.C. § 1441(a) ...............................................................................................7

Pub. L. 105-353.....................................................................................................9

**Other Authorities**

Brief in Opposition to Writ for Certiorari, *Cyan, Inc. v. Beaver County Employees Retirement Fund*, No. 15-1439 (Aug. 24, 2016) ................................5

H.R. Rep. No. 105-640 (1998).......................................................................9, 10, 11

Petition for Writ of Certiorari, at 12 n.9 & Appendices G & H, *Cyan, Inc. v. Beaver County Employees Retirement Fund*, No. 15-1439 (May 24, 2016)....................................................................................................4

Plaintiff Public Employees' Retirement System of Mississippi ("Plaintiff") hereby submits this reply brief in further support of its Motion to Remand.

## I. SUMMARY OF ARGUMENT

As explained more fully in Plaintiff's Opening Brief (ECF No. 30-1) ("Pl. Br."), the plain language of Section 22(a) of the Securities Act bars Defendants from removing this action to federal court. The amendments SLUSA made to that provision do not change this result, because, as the statutory text and legislative history make clear, SLUSA's effects are confined to state law. Though SLUSA carefully and clearly adjusted the jurisdiction of state and federal courts over state law claims, it made no adjustment to their jurisdiction over federal law claims. The reason is simple: Congress wanted all securities class actions to be decided under federal law, regardless of forum. Pl. Br. at 18–20.

Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Remand (ECF No. 31) ("Def. Op.") rejects this understanding of SLUSA. Indeed, not once in their brief do Defendants admit the widely accepted proposition that SLUSA's primary purpose was to preclude the litigation of state law claims in both state and federal courts. *See* Pl. Br. at 2. Instead, Defendants believe the focus of SLUSA was the forum, not the law, and argue that Congress's primary goal was to stop state courts from adjudicating *any* securities class actions. It is clear that Defendants think this is what Congress *should* have done. But, as the majority of

courts have determined, it is equally clear from the statutory text and the legislative history that Congress did not do it.

The structure of Defendants' brief is telling—they lead with dire warnings to the Court not to "deviate" from rulings by other, non-precedential courts, followed by policy arguments, followed by Congressional intent, and then, finally, they briefly reference the text of the statute. This backwards approach to statutory interpretation is especially problematic given Defendants' argument that the amendments to Section 22(a) strip state courts of their jurisdiction over federal claims. In a line of cases beginning with *Gulf Offshore Co. v. Mobil Oil Corp.*, the Supreme Court has recognized a strong presumption against finding that Congress has stripped state courts of jurisdiction over federal claims, absent "a clear statutory directive," an "unmistakable implication" from legislative history, or a "clear incompatibility between state-court jurisdiction and federal interests." 453 U.S. 473, 478 (1981); *see also* Pl. Br. at 12. Defendants do not even acknowledge this binding precedent, let alone satisfy its requirements.

Defendants focus instead on policy arguments. Unable to find clear support in the text or history of SLUSA, Defendants hope to convince the Court that Congress *meant* to make federal courts the exclusive forum for Securities Act class actions, and simply could not figure out how to do so clearly, or that Congress *should* have done so, and needs the Court to correct the oversight. Whatever

2

Defendants believe the law *should* be, however, *Gulf Offshore* forbids arguments that Congress *must* have or *should* have stripped state courts of jurisdiction. There is only one way to divest state court jurisdiction—clearly. Congress did not do so here and Section 22(a) continues to bar removal of this Action. This Action should be remanded for lack of removal jurisdiction.

## II. REPLY ARGUMENT

### A. The Majority of Courts Around the Country Have Granted Remand on This Question

In an attempt to distract the Court from the meaning of the text, Defendants introduce a variety of bogeymen in their Opposition. They caution this Court not to "deviate" and make "new law" contrary to the "*unanimous*" precedent in the Third Circuit. Def. Op. at 2, 6 (emphasis original). They warn of a "flood of cases" like those "spawned" in the Ninth Circuit. *Id.* at 5. They foretell an "'odd,' 'bizarre,' and 'absurd' result". *Id.* at 8. But the facts do not support this bombastic rhetoric.

First, Defendants' warning of a "split" between district courts is overblown. This is a case of first impression in Pennsylvania and there is no precedent from the Third Circuit Court of Appeals. Defendants' dire warning about "deviating" from "*[e]very court in the Third Circuit*," Def. Op. at 1–2 (emphasis original), is meant to obscure the reality: One New Jersey federal court applied Defendants' reading twice in related cases, and one Delaware federal court adopted the New Jersey ruling. Pl. Br. at 20–24. For reasons set out in the Opening Brief, Plaintiff

3

believes these cases, and the other cases Defendants cite, were wrongly decided. *Id.* Defendants do not explain why, in the absence of binding appellate precedent, these cases are the "most relevant" to the Court's analysis of Section 22(a), nor do they explain what is so dangerous about a "split" between two different district courts in the same circuit. Def. Op. at 6.

Second, far from creating "new law" by granting remand, this Court would be joining the majority of courts to address this question. Def. Op. at 4–6. As Plaintiff noted in the Opening Brief, courts in Ohio, Massachusetts, Illinois, West Virginia, Texas, California, Arizona, Georgia, and Alabama have all granted remand on this exact question. *See* Pl. Br. at 10 n.4, 22 n.11. The full tally, as far as Plaintiff is aware, is forty-four opinions granting remand to twenty denying it. *See* Def. Op. at 5 n.3; Petition for Writ of Certiorari, at 12 n.9 & Appendices G & H, *Cyan, Inc. v. Beaver County Employees Retirement Fund*, No. 15-1439 (May 24, 2016).[1] Defendants try to massage this number by suggesting the Court ignore Ninth Circuit cases because the California court of appeals and the Ninth Circuit have adopted Plaintiff's interpretation of Section 22(a). *See Madden v. Cowen & Co.*, 576 F.3d 957 (9th Cir. 2009); *Luther v. Countrywide Fin. Corp.*, 195 Cal.

---

[1] Defendants' Opposition fails to count a recent case from the District of Arizona granting remand, bringing the total to 44. *See* Def. Op. at 5 n.3; Pl. Br. at 22 n.11.

4

App. 4th 789 (2011). If anything, however, guidance from an appellate court should be considered more persuasive, not less.[2]

Third, there is nothing "bizarre" about this majority interpretation. Defendants' perception appears to be based on a fundamental misunderstanding of the operation of SLUSA. For example, they argue that granting remand would endorse an "upside down" result where federal law claims can be litigated in state court, but "*state* law must be litigated in *federal* court." Def. Op. at 7. Plaintiff agrees that *would* be bizarre, but that is not what SLUSA does, and is not what Plaintiff argued. SLUSA precludes state law claims from being litigated anywhere—not state court, not federal court. Indeed, SLUSA does not require removal to federal court; state courts are "equally competent" to dismiss precluded claims.[3] *See Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 646 (2006).

---

[2] Defendants also claim that these decisions caused a "flight" of securities class actions to state courts. Def. Op. at 2. But in the period they cite, California actually experienced an increase in Section 11 class action filings in *both* state and federal courts—a change better attributed to a corresponding increase in initial public offerings conducted in California, from just four in 2009 to fifty-four in 2014. *See* Brief in Opposition to Writ for Certiorari, at 14–16, *Cyan*, No. 15-1439 (Aug. 24, 2016). Defendants also fail to explain why there was no similar "flight" to the eight other states where district courts granted remand. *Id.*

[3] Similarly, in response to Plaintiff's argument that the legislative history supports this understanding, (Pl. Br. at 15–16), Defendants respond with the non-sequitur that "[o]f course" "SLUSA [was] intended to remove state law claims to federal court". Def. Op. at 16 n.9. Once again, Defendants pretend SLUSA was designed only to remove, rather than preclude, state law claims.

SLUSA restored the balance Congress struck when it first passed the securities laws. In 1933, Congress allowed plaintiffs to assert Securities Act claims in state or federal court. Then, in 1934, Congress gave federal courts exclusive jurisdiction over Exchange Act claims. Because the vast majority of securities class actions assert Exchange Act claims, the vast majority have always been litigated in federal court. Pl. Br. at 15. In response to the PSLRA, plaintiffs began asserting state law securities claims in state courts to avoid the Exchange Act's exclusive federal jurisdiction. Pl. Br. at 18. Congress considered the rise of state law securities actions an unintended negative consequence and passed SLUSA, forcing plaintiffs asserting fraud claims to file under federal law, in federal court, restoring the pre-PSLRA balance between state and federal courts. *Id.*

Ultimately, however, statutory interpretation is not about numbers or geography, or what policy Defendants prefer, it is about the text. And the text makes clear that Section 22(a) bars removal of this Action.

### B. State Courts Retain Jurisdiction of Securities Act Claims

Defendants argue that SLUSA divested state courts of their concurrent jurisdiction over Securities Act claims. *See* Def. Op. at 8–17. Defendants' Opposition, however, fails to engage with controlling Supreme Court precedent holding that state courts enjoy a "deeply rooted" presumption in favor of concurrent jurisdiction over federal claims, which Congress may only override by

6

(1) "an explicit statutory directive," (2) "unmistakable implication from legislative history," or (3) "a clear incompatibility between state-court jurisdiction and federal interests." Pl. Br. at 12; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).[4]

Defendants do not dispute that these cases are squarely on point. Nor do Defendants engage with the District of Massachusetts' opinion in *Fortunato v. Akebia Therapeutics Inc.*, 183 F. Supp. 3d 326, 331 (D. Mass. 2016), applying the Supreme Court's analysis to this precise question and granting remand. *See* Pl. Br. at 4, 12–13. They simply ignore this precedent. Consequently, it is unsurprising that Defendants fail to satisfy the *Gulf Offshore* test.

Defendants not only fail to show "an explicit statutory directive," they fail to present *any* text-based rationale for their reading of Section 22(a). Def. Op. at 12–14. Defendants claim that the general reference to Section 16 actually refers to the definition of "covered class actions" in Section 16(f)(2). *Id.* The problem with this argument is that Section 22(a)'s amended jurisdictional language does not

---

[4] Without actually discussing these cases, Defendants seem to suggest they were superseded by *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003). Def. Op. at 3 n.1. But *Mims* affirmed the continued relevance of *Gulf Offshore* nine years after *Breuer*. *Mims*, 565 U.S. at 386 n.15. Further, *Breuer* says nothing about concurrent jurisdiction. *Breuer* held that plaintiffs have the burden of showing an express exception to removal where otherwise proper under 28 U.S.C. § 1441(a). 538 U.S. at 698. *Breuer* supports Plaintiff's position, as it recognizes the Securities Act's removal bar satisfies this burden. *Id.* at 696. Defendants now must demonstrate that this Action does not fit within the Securities Act's bar. *See Elec. Workers Local #357 Pension v. Clovis Oncology, Inc.*, 185 F. Supp. 3d 1172, 1183 (N.D. Cal. 2016) (recognizing that the removal bar shifts burden to defendant).

7

expressly refer to subsection (f), and the other conforming amendment to Section 22(a) *does* expressly refer to subsection (c). Pl. Br. at 14. Because the statutory text refers to Section 16 as a whole, and Section 16 contains many references to "covered class actions," Defendants must present *some* rationale for limiting their discussion to the definition. *Id*. But they do not. Instead, they quote the statutory language and conclude without analysis that, "[t]hus, Section 22(a) . . . specifically excepts from [] state court jurisdiction 'covered class actions.'" Def. Op. at 13. But Defendants' faith that this reading is self-evident is belied by the fact that the *majority* of courts have rejected Defendants interpretation. *See supra* at 4.

Having assumed without support that Section 22(a)'s jurisdictional exception is referring only to subsection (f)(2), Defendants devote the remainder of their efforts to disproving the straw-man argument that the definition of "covered class action" in Section 16(f)(2) "is *not* limited to class actions involving state law claims." Def. Op. at 15–16. While that narrow point is true, it is irrelevant unless Defendants can explain *why* the Court is limited to considering that subsection. Given the chance, Defendants declined to do so. Having failed to find an explicit statutory directive, Defendants turn to legislative history, to no avail.

Defendants failed to show an "unmistakable implication" that Congress intended to strip state courts of concurrent jurisdiction over this Action. Defendants claim that SLUSA's central focus was state *courts*, not state *claims*. To

support this position, Defendants present quotes from the legislative history about ensuring that most securities class actions proceed in federal court. Def. Op. 9–11. But Defendants omit vital context from these quotes.

We do not need to guess whether Congress was focused on state law or state courts. SLUSA's focus is stated at the top of the bill: "To amend the Securities Act of 1933 and the Securities Exchange Act of 1934 to limit the conduct of securities class actions under *State law*, and for other purposes." Pub. L. 105-353 (emphasis added). Congress *did* expect that precluding state law claims would confine most securities class actions to federal court. For example, the House Report stated that SLUSA "would *preempt state securities laws* in order to prohibit most securities-related class-action suits from being adjudicated in state courts." H.R. Rep. No. 105-640 (1998), at 14 (emphasis added). Preempting state law claims has this effect because Congress expressly granted federal courts exclusive jurisdiction over Exchange Act claims. Pl. Br. at 15; 15 U.S.C. § 78aa(a).

Thus, Defendants' quotations are not at odds with Plaintiff's understanding of the statute. Further, the general language they cite does not address the specific question before the Court: Whether the conforming amendments were intended to divest state courts of jurisdiction. The legislative history is conspicuously silent as to these amendments, save the perfunctory description that "Subsection 101(a)(3)

9

provides for conforming amendments to Section 22(a) of the Securities Act of 1933." H.R. Rep. No. 105-640, at 18; Pl. Br. at 16.

Defendants claim it makes no difference that Congress described the changes to Section 22(a) as "conforming amendments" in the legislative history and final bill. Def. Op. at 11–12. But it is not *only* that the drafters used that characterization, it is that *and* the contrast with the descriptions about the rest of SLUSA. *See* H.R. Rep. No. 105-640, at 16. The fact that the drafters provided detailed descriptions of the intended effects of Sections 16(a) through (f) suggests that, had they intended the conforming amendments to do something as drastic as strip state courts of jurisdiction, they would have been similarly descriptive. *See id.* Instead, the legislative history is silent.[5] *Id.* This silence is hardly the "unmistakable implication" Defendants require. Pl. Br. at 16.

### C.  Section 22(a) Bars Removal of this Action

Defendants' fallback argument is that Section 16(c) allows removal of all covered class actions. Def. Op. at 17–20. But Defendants fail to convincingly distinguish the Supreme Court's holding to the contrary in *Kircher*, and their arguments cannot be squared with the statute's plain text and legislative history.

---

[5] *Burgess v. U.S.*, 553 U.S. 124, 135 (2008) is consistent with Plaintiff's understanding here. In *Burgess*, the Supreme Court rejected a reading that rendered "conforming amendments" without substance. The Court explained that the amendments in question were conforming "because they harmonized sentencing provisions" in two different statutes. *Id.* Similarly, the amendments to Section 22(a) harmonize that provision with Section 16. *See* Pl. Br. at 8 n.3, 13–14.

10

Defendants urge the Court to ignore Section 16(b) even though the single sentence in Section 16(c) refers to that subsection twice. Def. Op. at 18–20. Defendants cannot explain why these references were included. *Id.* Rather, they ignore the first reference and claim that the second "simply recognizes that Section 16(b) and (c) perform different functions." Def. Op. at 20. In other words, it does nothing. The fact that Defendants' reading of subsection (c) requires ignoring a third of the provision should end the argument.[6]

Further, eight justices of the Supreme Court considered and rejected Defendants' argument in *Kircher*. Defendants present two arguments as to why this Court should ignore *Kircher*. First, they argue that *Kircher* did not involve federal claims. Def. Op. at 20. This is a false distinction. The court below had adopted Defendants' exact argument, that "all covered class actions involving covered securities, whether precluded or not, [are] removable under the Act." *Kircher*, 547 U.S. at 638. The Supreme Court rejected this position, stating that "removal jurisdiction under subsection (c) is . . . restricted to precluded actions defined by subsection (b)." *Id.* at 643–44. Second, Defendants argue that this

---

[6] The legislative history further rebuts Defendants' argument: "Subsection 16(c) provides that any class action described in subsection (b) that is brought in a State court shall be removable to a Federal district court, and may be dismissed pursuant to the provisions of subsection (b). This provision is designed to prevent a State court from inadvertently, improperly, or otherwise maintaining jurisdiction over an action that is preempted pursuant to subsection (b)." H.R. Rep. No. 105-640, at 16.

discussion in *Kircher* is *dicta*. Def. Op. at 20. Though Plaintiff disagrees, the Opening Brief cited courts that have followed *Kircher* as *dicta*, because even as *dicta*, it is "particularly strong *dicta* that address[es] the exact issue of statutory interpretation that is before" the Court. Pl. Br. at 10 n.4 (quoting *Niitsoo v. Alpha Nat. Res. Inc.*, 902 F. Supp. 2d 797, 803–04 (S.D. W. Va. 2012)).

### III. CONCLUSION

Plaintiff respectfully requests this Court to enter an Order granting remand.

DATED: May 22, 2017           GOLDMAN SCARLATO & PENNY, P.C.

*/s/ Mark S. Goldman*
Mark S. Goldman
8 Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
Telephone: (484) 342-0700
goldman@lawgsp.com

LABATON SUCHAROW LLP
Jonathan Gardner
Serena Hallowell
Thomas Watson
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
jgardner@labaton.com
shallowell@labaton.com
twatson@labaton.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I, Mark S. Goldman, Esquire, hereby certify that the foregoing Reply Memorandum of Law in Further Support of Plaintiff's Motion to Remand was served on all counsel of record via ECF on May 22, 2017. Pursuant to Local Rule 5.1.2(8)(b), I further certify that the foregoing document is available for viewing and downloading on ECF.

Dated: May 22, 2017                                                   /s/ *Mark S. Goldman*
                                                                                 Mark S. Goldman